**CLINE v. SOUTHERN RY. CO.**

District Court, M. D. North Carolina.
Feb. 29, 1940.

C. Clifford Frazier, of Greensboro, N. C., and J. J. Henderson, of Burlington, N. C., for plaintiff.

R. M. Robinson, of Greensboro, N. C., for defendant.

HAYES, District Judge.

At the close of plaintiff's evidence defendant moved for a directed verdict in its favor and at the close of all of the evidence moved for a directed verdict on the ground that "the evidence shows that the plaintiff's intestate was guilty of contributory negligence which proximately resulted in his death and damage to his truck." The court overruled the first motion and allowed exception. It reserved its ruling on the last motion, pending a study of the North Carolina law on the subject, but submitted the case to the jury which answered the issues in favor of the plaintiff. Within the time provided by Rule 50 (b) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, defendant moved for judgment notwithstanding the verdict. Argument on the motion has been heard and considered.

There was conflicting evidence on the issue of defendant's negligence but there is no dispute about the facts that the collision occurred on a much-traveled crossing just outside the corporate limits of High Point, N. C., about noon on a clear day. Plaintiff's intestate lived within one mile of this crossing and was familiar with the conditions. Defendant has three tracks —north and south bound main tracks on the main line between Washington and Atlanta, and a side track crossing the public highway. The tracks at this crossing are straight and level and run northeastwardly toward High Point. The highway is on grade with the road bed. The intestate and

two of his employees were riding in the truck, approaching from the northwest, reaching the spur track first, the southbound track next and the northbound track last. It is 35 feet from the center of the spur track to the center of the northbound track. A northbound special freight train—consisting of an engine and three or four box cars—collided with the truck on the northbound track, knocking it in the direction of High Point 100 feet, the wrecked truck landing on the southbound track. The occupants of the truck were killed. From the center of the spur track in the center of the highway was an unobstructed view in the direction from whence the train came for 3,800 feet. The view toward High Point was also unobstructed for between one-quarter and one-half of a mile. There were no cars on the spur track. There was an embankment to the right before reaching the spur track which in part obscures one's vision until one is near the spur track. Actual measurement shows without contradiction that this embankment never exceeds 8.9 feet above the level of the track and tapers down to nothing at the highway. The locomotive was 13 ft. 9 in. high. Each party offered a civil engineer, and these physical facts were not in dispute. The witnesses differed as to the effect of the embankment obstructing the view, but it was conceded that no obstruction interfered with one's view for 3,800 ft. after reaching the center of the spur track.

The plaintiff concedes that the intestate would be guilty of contributory negligence as a matter of law under both the decisions of the Supreme Court of North Carolina and of the federal courts, but for the fact that the intestate was induced to cross by the failure of the automatic signal lights to flash. There was a sharp conflict in the evidence about the lights, but the court instructed the jury that if the signals were working the plaintiff could not recover. We assume therefore that the jury found the signals were not working; that no other signal was given. The familiarity of plaintiff's intestate with the signals and the failure of them to operate, it is urged, induced him to enter the crossing in the belief that no train was approaching and that, being thus thrown off his guard, the general rule of looking and listening for the approach of trains is relaxed so that, having entered the crossing on the assurance that no train was approaching, he was only required to exercise the care of a prudent man in similar circumstances which should be left to a jury for determination.

The defendant insists that the absence of gates or signals or flagmen does not absolve the traveler from the duty to look and listen for trains.

There is no evidence that the intestate looked for the train. If he had looked, there was nothing whatever to prevent his seeing the train for 3,800 feet after he reached the center of the spur track.

The plaintiff relies on the decisions in Cashatt v. Brown and R. R., 211 N.C. 367, 190 S.E. 480, and Oldham v. R. R. Co., 210 N.C. 642, 188 S.E. 106, and the cases therein cited. The defective condition of the crossing, causing the automobile to stall, coupled with positive proof that the deceased did look and listen for the train, made a case for the jury as to contributory negligence and, if so, whether his negligence was the proximate cause of the injury.

The Oldham case, supra, involves a crossing accident where a watchman was due to be stationed, to the knowledge of plaintiff. Plaintiff looked in both directions before entering upon the tracks. The watchman neglected to give any warning, but the instant plaintiff's car reached the first rail, the flagman rushed out and waved plaintiff to stop, causing him to choke his car and the switching train to hit him. The court found no error and sustained a verdict for plaintiff. The court distinguished that case from Pitt v. R. R. Co., 203 N.C. 279, 166 S.E. 67, where plaintiff drove upon the track without looking in the direction from which the train came. The court approves the quotation from 33 Cyc. 1028, that when a flagman stationed at a crossing fails to give warning or signals fail to function, a traveler familiar with the custom may enter upon the track upon the assumption that it is safe for him to go on the crossing upon which he may rely within reasonable limits.

In Pitt v. R. R. Co., supra, the flagman seemed not to have given timely warning, but the plaintiff was nonsuited because he did not look in the direction from which the train came.

The failure to look when the physical facts disclose that by looking the injury could have been avoided constitutes contributory negligence which is the proximate cause of the injury as a matter of

law. A prudent person realizes that trains pass over railroad tracks; that they are likely to pass at any moment, especially on double track roads like the Southern, and, although automatic signals give no warning of danger, as he enters upon a crossing in the day time, with his view unobstructed, he ought to glance his eyes up and down the tracks before driving across the main line of a double track railroad. To do less than this would reward carelessness and encourage crossing accidents.

■ The numerous decisions of the Supreme Court of North Carolina clearly establish the principle stated in Coleman v. R. R. Co., 153 N.C. 322, 325, 69 S.E. 251, 252, "A railroad crossing is itself a notice of danger, and all persons approaching it are bound to exercise care and prudence, and, when the conditions are such that a diligent use of the senses would have avoided the injury, a failure to use them constitutes contributory negligence and will be so declared by the court." And recognizing exceptions to the rule, it says: "But, where the traveler 'can see and won't see' he must bear the consequences of his own folly. His negligence under such conditions bars recovery because it is the proximate cause of his injury. He has the last opportunity to avoid injury and fails to take advantage of it." Harrison v. R. R. Co., 194 N.C. 656, 140 S.E. 598, 601; Godwin v. R. R. Co., 202 N.C. 1, 3, 161 S.E. 541.

The rule holding that contributory negligence is a question for the jury has been applied only in those cases where the view was obstructed and there was evidence to show the injured party used due care. Shepherd v. R. R. Co., 166 N.C. 539, 82 S. E. 872. But when the uncontradicted evidence shows an unobstructed view and, by looking, the traveler could see the approaching train in ample time to avoid the injury, his failure to look under such circumstances constitutes contributory negligence as a matter of law. Coley v. R. R. Co., 213 N.C. 213, 195 S.E. 392; Bullock v. R. R. Co., 212 N.C. 760, 194 S.E. 468; Harrison v. R. R. Co., supra.

Counsel for plaintiff cited numerous decisions which the court has carefully considered, but there is no case by the Supreme Court of North Carolina which unqualifiedly supports plaintiff's position. The decisions support defendant's position.

■ In the absence of a controlling decision by the state Supreme Court, it is the duty of the district court to follow the federal decisions. Seaboard Mutual Casualty Co. v. Carl Profit, 4 Cir., 108 F.2d 597; decided January 8, 1940. Calloway v. Penn. Ry. Co., 4 Cir., 62 F.2d 27, 28 is in point with the instant case. Automatic signals were not working in that case, and the court said, "We are of the opinion that this does not relieve one about to cross the tracks from the duty to use due care." Atchison, T. & S. F. Ry. Co. v. McNulty, 8 Cir., 285 F. 97; Lang v. Byram, 8 Cir., 35 F.2d 489; Northern Pacific Ry. Co. v. Bacon, 9 Cir., 91 F.2d 173.

■ It can not be assumed that the plaintiff's intestate took proper precautions to protect himself for it appears that if proper precautions were taken they could not have failed to prove effectual. Miller v. Union Pacific R. Co., 290 U.S. 227, 231, 54 S.Ct. 172, 78 L.Ed. 285. When an accident occurs at the noonday's sun on a grade crossing where the highway is on a level with the railroad and the traveler can see all along the track for 3,800 feet in the direction from which the train approaches, with nothing to obstruct his view or to prevent him from looking after he gets within 35 feet of the track, his failure to look must be regarded as contributory negligence barring his right to recover.

If the accident here had occurred on the first track (switch track), or possibly on the second track (southbound main track), perhaps the jury should have been permitted to pass on the contributory negligence, due to the evidence tending to show that the electric signals were not flashing. But the implied invitation arising therefrom must have some reasonable limitation; the traveler can not close his eyes to the approach of trains on the other tracks.

■ What has been said was based upon the evidence taken in the light most favorable to the plaintiff. There was strong evidence showing the automatic signals were flashing; after the wreck, according to all of the evidence, the train backed over the crossing and the signals were working. But plaintiff is entitled to have the case considered on the assumption that they did not work. Three witnesses claimed to have seen the collision and all agree that the truck was going between ten and fifteen miles an hour and did not stop until the train hit it. Many trains passed over the main line there daily and this plaintiff's intestate knew. He should have

exercised care commensurate with the situation confronting him.

The court therefore holds that a directed verdict in defendant's favor ought to have been granted on the issue as to contributory negligence and will enter judgment in favor of the defendant notwithstanding the verdict in accordance with Rule 50 (b) of Federal Rules of Civil Procedure.