### C. A. BAKER, ADMINISTRATOR, v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 5 May, 1909.)

1. Railroads—Infants—Negligence—Evidence—Nonsuit.

When it is shown by the evidence that plaintiff's intestate, a boy nearly fifteen years of age, was riding, by permission, on defendant railway company's flat car, and, of his own volition, unexpectedly jumped from the car when the train was moving at the speed of thirty miles an hour, and was killed, his act of thus jumping amounted to such negligence on his part as will bar recovery in a suit for damages against the company by his administrator, and a motion for judgment as of nonsuit upon the evidence should be granted.

2. Railroads—Infants—Negligence—Questions for Court—Evidence—Nonsuit.

The age at which an infant's responsibility for his own negligence will be presumed is a question of law; and when, at the age of fifteen, it is shown that an infant was killed as the result of his own negligent act in jumping from a car of a train moving at a speed of thirty miles an hour, a motion for judgment as of nonsuit upon the evidence should be allowed.

3. Evidence—Supreme Court—Nonsuit Allowed.

A motion to nonsuit upon the evidence may be allowed in the Supreme Court, on appeal, when it appears to have been improperly refused by the trial judge.

ACTION tried before *Long, J.,* and a jury, at October Term, 1908, of ANSON, to recover damages for the negligent killing of Carl Baker, a boy within one month of fifteen years of age.

The usual issues of negligence, contributory negligence, and damages were submitted and found for plaintiff.

From the judgment rendered defendant appealed.

*Robinson & Caudle* and *L. Medlin* for plaintiff.
*John D. Shaw* and *Murray Allen* for defendant.

BROWN, J. The defendant, in apt time, entered motions to
nonsuit, upon the ground that upon plaintiff's own evidence he
is not entitled to recover—first, because no negligence is shown;
second, because the intestate was guilty of contributory negli-
gence. We are all of opinion that this last contention is so
plainly with the defendant that it is unnecessary to consider
the first.

These facts appear from plaintiff's evidence: His son, Carl,
fifteen years of age, lacking one month, was killed by jumping
from defendant's work train while running about thirty miles
an hour. The train consisted of flat cars, equipped with ma-
chinery for ditching.

Witnesses for plaintiff, who testify concerning the occurrence,
say that on the afternoon of 15 August, 1906, the boy, Carl,
and his younger brother, Luther Baker, came up to the train
from their home, about three-quarters of a mile away. When
they arrived at the train Herman Shannon, another boy, was
standing on a flat car. Carl Baker asked the conductor if he
could ride, and the conductor told him to get on the rear end of
the train, on a flat car, out of the way. Carl then climbed upon
the flat car and pulled his younger brother up with him. The
train continued the work of ditching. The boys remained on
the car an hour. It became necessary for the train to take a
siding to let another train pass, going towards Monroe. After
this train passed, the ditching train pulled out for Waxhaw,
two miles away. When the train had gotten up good speed and
was running at a rate of about thirty miles an hour Carl Baker
got up from where he was sitting, on a scantling, and sat down
on the rear of the flat car and jumped off between the rails.

Herman Shannon, who was on the car with plaintiff's intes-
tate, testified that he remained on the train, in the position occu-
pied by himself and Carl Baker until it reached Waxhaw, with-
out injury to himself. This witness was nearly a year younger
than Carl Baker.

According to the testimony of the plaintiff, his son, Carl, was

an "intelligent, smart boy, and of average size for his age," and for two years had been residing within three-quarters of a mile from the railroad.

It is settled beyond controversy by the decisions of this and all other courts in this country that the act of the intestate in jumping off the rapidly moving train of defendant was one of such recklessness as will bar recovery if the intestate is held, in law, responsible for his conduct.   *Owens v. Railroad,* 147 N. C., 357; *Morrow v. Railroad,* 134 N. C., 92.

The learned counsel for plaintiff, Mr. Caudle, in an able and elaborate argument, endeavored to show that the intestate, on account of his age, should not be held responsible for his act. But an examination of the authorities in this and other States discloses that they are overwhelmingly against him.   The case is not to be judged by the length of experience of the boy, Carl, with railroads, although the evidence discloses that for two years he had resided near one, and that his twelve-year-old brother, Luther, is by no means a stranger to them.   Carl wore long trousers, was well grown, bright, smart and intelligent.   He was not an infant of tender years, and, in the absence of evidence to the contrary, had the capacity of an adult to appreciate danger.   He was three years beyond the age at which he could be employed in a factory, around dangerous machinery, without violating the child-labor law, and was old enough to be held responsible for a violation of the criminal law of the land.

An infant of the age of fourteen years is presumed to have sufficient capacity to be sensible of danger and to have power to avoid it, and this presumption will stand until rebutted by clear proof of the absence of such discretion as is usual with infants of that age.   At what age this presumption arises is not a question of fact, but one of law.   The inquiry, At what age must an infant's responsibility for negligence be presumed to commence? cannot be answered by referring it to a jury.   That would furnish us with no rule whatever.   It would simply produce a shifting standard, according to the sympathies or prejudices of those who composed each particular jury.   One jury might fix the age at fourteen, and another at eighteen, and another at twenty.   The responsibilities of infants are clearly

defined by text writers and courts. At common law, fourteen was the age of discretion in males and twelve in females. At fourteen an infant could choose a guardian and contract a valid marriage. After seven an infant may commit a felony, although there is a presumption in his favor, which may, however, be rebutted. But after fourteen an infant is held to the same responsibility for crime as an adult. Sharswood's Blackstone, Vol. 1, pp. 20, 435, 404.

Inasmuch as an infant, after fourteen, may select a guardian, contract marriage, is capable of harboring malice and of committing murder, it is no great imposition on him to hold him responsible for his own negligence.

In the case of *Tucker v. Railroad,* 124 N. Y., 308, the Court of Appeals of New York says: "The question at what age an infant's responsibility for negligence may be presumed to commence is not one of fact, but of law. In the absence of evidence tending to show that a boy twelve years of age was not qualified to understand the danger and appreciate the necessity for observing that degree of caution in crossing a railroad track an adult would, he must be deemed *sui juris* and chargeable with the same measure of caution as an adult."

To same effect is *Nagle v. Railroad,* 88 Pa. St., 35. That infants are to be held for the consequences of their own negligence in actions for injuries to them has long been settled by this and other courts, and so declared by text writers. Shearman and Red. Neg., sec. 49; Wharton on Neg., 314; *Manly v. Railroad,* 74 N. C., 655; *Murray v. Railroad,* 93 N. C., 94; *Railroad v. Gladmon,* 15 Wall., 401; *Railroad v. Stout,* 17 Wall., 657.

From all these and other approved authorities the principle is deduced that an infant, so far as he is personally concerned, is held to such care and prudence as is usual among children of the same age; and if his own act directly brings the injury upon him, while the negligence of the defendant is only such as exposes the infant to the possibility of an injury, the latter cannot recover. The Supreme Court of the United States has substantially held the same to be sound law in the cases above cited.

We find in the books many cases where children of various ages, from seven years upwards, have been denied a recovery because of their own negligence. *Roland v. Railroad,* 36 Mo., 484; *Meek v. Railroad,* 52 Cal., 605; *Conley v. Railroad,* 4 Am. and Eng. Railroad Cases, 533; *Mathis v. Manufacturing Co.,* 140 N. C., 530; *Murray v. Railroad, supra; Beck v. Railroad,* 148 N. C., 62; S. E. Rep., 883.

In *Meredith v. Railroad,* 108 N. C., 616, the plaintiff, a bright boy, about thirteen years old, while passing along the highway, was struck and injured by an engine while attempting to avoid another, coming from the opposite direction. The Court held that his administrator was not entitled to recover for his death. *Judge Avery* says: "The witnesses concur in the statement that the boy who was injured was an intelligent youth, about thirteen years old. In the absence of knowledge or information to the contrary, the engineer was justified in supposing that he would look to his own safety, even when trains were moving on three parallel tracks, if there was manifestly an opportunity to escape by walking across the railway to a neighboring sidetrack."

Again, he says: "The boy injured was described by witnesses as being bright and 'smart'; but if he was *apparently capable of appreciating his peril* or his situation, it is sufficient to relieve the servants of the company from the imputation of carelessness in assuming that he would step aside before the engine reached him." This principle has been applied in other States, regardless of whether the child was over the age of fourteen years.

In *Dull v. Railroad* (Ind.), 52 N. E., 1013, it is held that a child eleven years old and of sufficient intelligence to know the difference between safety and danger is a person *sui juris,* so as to be charged with contributory negligence, resulting in his being struck by a train.

"A boy of eleven years of age knows as well as an adult does what a railroad is, and the use to which it is put, and the consequence to a person who should be struck by a passing train, and knows that he should not stop to play and lounge amid a network of tracks. It is true that a boy of that age cannot be presumed to have the judgment of an adult, but it does not require much

judgment to keep from walking in dangerous places, the dangers of which are fully understood." *Masser v. Railroad*, 61 Ia., 602; also, *Powers v. Railroad*, 52 Minn., 332.

In *Mendenhall v. Railroad* (Kan.), 61 (L. R. A., 120), a fifteen-year-old boy paid a brakeman on a passenger train twenty-five cents to permit him to ride on the train. The brakeman told him to get on the platform of the baggage car, and to get off at stopping places and keep out of sight. The plaintiff rode upon the platform to a nearby station, and in getting off the train, while in motion, on the opposite side from the depot, stumbled over a semaphore board, fell under the train and received the injury complained of. The demurrer to the complaint was sustained. The Court says that "He was a trespasser and not a passenger. The company owed him no duty in regard to the construction of its semaphore, or otherwise, except to avoid willful and wanton negligence. The plaintiff was injured, not because he was riding on the platform, but because he got off the train while in motion and on the opposite side of the car from the depot. The allegation is insufficient to show the defendant to have been guilty of any willful or wanton negligence or to relieve the plaintiff from the responsibility of his own wanton recklessness."

The Massachusetts Court holds that "A street railway corporation is not liable for an injury caused to a boy ten years old, who was, when injured, playing with other children upon a car, left without guard for several days on a public street of a city." *Gay v. Railroad*, 159 Mass., 238.

In *Studer v. Railroad*, 121 Cal., 400, recovery was denied in an action for the death of a child between twelve and thirteen years of age, who was killed in attempting to pass between the cars of a freight train. The Court says: "The fact that deceased was only about twelve years of age did not require the court to submit to the jury whether his attempt to pass between the cars constituted negligence. The law imposes upon minors the duty of giving such attention to their surroundings and care to avoid danger as may reasonably be expected in persons of their age and capacity; and children as well as adults must use discretion

which persons of their years ordinarily have, and cannot be permitted with impunity to indulge in conduct which they know or ought to know to be reckless."

In *Sheets v. Railroad,* 54 N. J. L., 518, an intelligent child, thirteen years old, was struck by a street car while crossing a public street. Recovery was denied. The Court says: "The trial judge laid down the rule of law with respect to her responsibility with substantial accuracy. She was evidently *sui juris,* and the jury were told to consider the degree of care and discretion which would be expected from her. The jury found by their verdict that she was not guilty of contributory negligence; in other words, she was at the time of the occurrence in the exercise of that degree of care which would reasonably be expected from a child of that age and intelligence."

This presumption of discreet judgment which arises after fourteen years of age must stand until it is overthrown by clear proof of the absence of such natural intelligence as is usual with infants of similar age. If such evidence is offered by the plaintiff to rebut such presumption its weight and value are for the jury to estimate.

In this case the plaintiff does not attempt to rebut such presumption, nor does he offer even a suggestion that the engineer, after he started his train, caused the injury or could have prevented it. The intestate was sitting on the rear end of the last flat car, while it was moving at great speed, and suddenly and voluntarily jumped off and was instantly killed. What his motive was in so doing is immaterial. The conclusion is irresistible that had the intestate imitated the wholesome example of his more youthful yet more prudent companion, who sat beside him, and had gone on the short distance to Waxhaw, he would have easily returned to his home in safety.

The motion to nonsuit is allowed. *Hollingsworth v. Skelding,* 142 N. C., 252.

Reversed.